## Docket No. 24-5231

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

ESTATE OF JOSEPH H. DAHER,
by and through its personal representative, Christine Daher,

*Plaintiff-Appellee,*

v.

WELLS FARGO BANK, N.A., as Securities Intermediary,

*Defendant-Appellant,*

LSH CO.,

*Defendant.*

_____

*Appeal from a Decision of the United States District Court for the Central District of California,
No. 2:21-cv-03239-TJH-SK · Honorable Terry J. Hatter*

## APPELLANT'S OPENING BRIEF

COURTNEY QUIRÓS, ESQ.
ALSTON & BIRD, LLP
1201 West Peachtree Street, Suite 4900
Atlanta, Georgia 30309
(404) 881-7000 Telephone
courtney.quiros@alston.com

KIMBERLY CHEMERINSKY, ESQ.
ALSTON & BIRD, LLP
350 South Grand Avenue, 51st Floor
Los Angeles, California 90071
(213) 576-1000 Telephone
kim.chemerinsky@alston.com

*Attorneys for Appellant Wells Fargo Bank, N.A.*



## DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellant Wells Fargo Bank, N.A., as Securities Intermediary ("Securities Intermediary"), by and through its undersigned counsel, files the foregoing statement that identifies any parent and publicly held corporation that owns 10% or more of its stock.

Securities Intermediary is a wholly-owned subsidiary of WFC Holdings, LLC, which is a wholly-owned subsidiary of Wells Fargo & Company. Wells Fargo & Company is a publicly held company (NYSE: WFC). Wells Fargo & Company is not aware that any other publicly held company owns 10% or more of its stock.

Date: December 2, 2024          Alston & Bird LLP

*/s/ Courtney Quirós*
Courtney Quirós
*Attorney for Defendant-Appellant*
WELLS FARGO BANK, N.A., as
Securities Intermediary

ii

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ....................................................................................1

JURISDICTIONAL STATEMENT ........................................................5

ISSUES PRESENTED.............................................................................5

STATEMENT OF THE CASE.................................................................6

I.      FACTUAL BACKGROUND.........................................................8

II.     PROCEDURAL BACKGROUND ...............................................10

SUMMARY OF THE ARGUMENT .....................................................13

STANDARD OF REVIEW ...................................................................16

ARGUMENT .........................................................................................17

I.      THE DISTRICT COURT ERRED IN HOLDING THAT SECTION
       8106'S THREE-YEAR STATUTE OF LIMITATIONS DID NOT
       APPLY TO THE ESATE'S SECTION 2704(b) CLAIM............................17

       A.    The District Court misinterpreted Butler. ...........................17

       B.    The District Court erred in concluding that laches did not bar
            the Estate's Section 2704(b) claim.......................................21

II.     THE DISTRICT COURT ERRED IN HOLDING THAT
       SECURITIES INTERMEDIARY CAN BE LIABLE DESPITE
       ACTING SOLELY AS A DIRECTED SERVICE PROVIDER. .................25

       A.    The statutory language of Section 2704(b) excludes Securities
            Intermediary as a "payee." ...................................................27

       B.    The District Court's interpretation of "payee" undermines the
            policy intent of Section 2704(b).........................................30

       C.    Interpreting "payee" to include Securities Intermediary
            contravenes the common law principles Section 2704(b)
            purportedly codifies and general principles of tort law. .....................31

III.    THE DISTRICT COURT ERRED IN FAILING TO OFFSET
       PREMIUMS PAID AGAINST THE AWARDED PROCEEDS. ................36

CONCLUSION.......................................................................................38

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adams v. Jankouskas*,
452 A.2d 148 (Del. 1982) ...............................................................24

*Andor Pharms., LLC v. Lannett Co.*,
No. N22C-06-078-EMD CCLD, 2024 Del. Super. LEXIS 359
(Del. Super. Ct. Apr. 15, 2024).........................................................22

*Barnett Bank of Marion Cnty., N.A. v. Nelson*,
517 U.S. 25 (1996).............................................................................34

*Bell Bros. v. Bank One, Lafayette, N.A.*,
116 F.3d 1158 (7th Cir.1997) ...........................................................35

*Bonded Fin. Servs. v. European Am. Bank*,
838 F.2d 890 (7th Cir. 1988) ............................................................29

*Burkhart v. Genworth Fin., Inc.*,
250 A.3d 842 (Del. Ch. 2020) .....................................................3, 22

*Butler v. Butler*,
222 A.2d 269 (Del. 1966)...........................................................passim

*Christy v. Alexander & Alexander Inc. (In re Finley, Kumble, Wagner,*
*Heine, Underberg, Manley, Myerson & Casey)*,
130 F.3d 52 (2d Cir. 1997) .........................................................29, 32

*Cnty. of Placer v. Aetna Cas. etc. Co.*,
50 Cal. 2d 182 (1958) .......................................................................34

*COR Clearing, LLC v. Calissio Res. Grp., Inc.*,
918 F.3d 579 (8th Cir. 2019) ............................................................32

*COR Clearing, LLC v. Calissio Res. Grp., Inc.*,
No. 8:15CV317, 2017 U.S. Dist. LEXIS 183405
(D. Neb. Nov. 6, 2017) ...............................................................31, 32

*Div. of Fam. Servs. v. O'Bryan*,
164 A.3d 58 (Del. 2017) ...................................................................27

iv

*East v. Tansey*,
No. 1592, 1993 Del. Ch. LEXIS 247 (Del. Ch. Oct. 22, 1993)..........................24

*Eisenberg v. Wachovia Bank, N.A.*,
301 F.3d 220 (4th Cir. 2002) ....................................................................34

*Est. of Frank v. GWG DLP Master Tr. Dated 03/01/06*,
No. 23-cv-00584-JLH, 2024 U.S. Dist. LEXIS 174353
(D. Del. Sept. 26, 2024) ..................................................................20, 31

*Est. of Malkin v. Wells Fargo Bank, N.A.*,
379 F. Supp. 3d 1263 (S.D. Fla. 2019) ..............................................20

*Finnie v. Walker*,
257 F. 698 (2d Cir. 1919) ..........................................................................37

*Foad Consulting Grp., Inc. v. Azzalino*,
270 F.3d 821 (9th Cir. 2001) ..............................................................17

*FOP Lodge No. 15 v. City of Dover*,
No. 16654, 1999 Del. Ch. LEXIS 224 (Del. Ch. Dec. 10, 1999)......................19

*Garrett v. Viva Cap. 3, L.P.*,
No. 3:22-cv-89(RNC), 2024 U.S. Dist. LEXIS 156914
(D. Conn. Aug. 31, 2024) ..............................................................30

*Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*,
No. 7906-VCG, 2014 Del. Ch. LEXIS 243 (Del. Ch. Nov. 26, 2014)..............28

*Heritage v. Bd. of Educ.*,
447 F. Supp. 1240 (D. Del. 1978)................................................22, 23

*In re Agape Litig.*,
681 F. Supp. 2d 352 (E.D.N.Y. 2010) ..............................................35

*In re Cir. All., Inc.*,
228 B.R. 225 (Bankr. D. Minn. 1998)................................................32

*Lakeside Lumber Products, Inc. v. Evans*,
110 P.3d 154 (Utah Ct. App. 2005)................................................25

*Lanouette v. Laplante*,
36 A. 981 (N.H. 1892) ........................................................................37

v

*Leb. Cnty. Employees' Ret. Fund v. Collis*,
  287 A.3d 1160 (Del. Ch. 2022) ........................................................21

*McKenna v. Singer*,
  No. 11371-VCMR, 2017 Del. Ch. LEXIS 138 (Del. Ch. July 31, 2017) .........28

*Mengele v. Christiana Fed. S. L. Ass'n*,
  287 A.2d 395 (Del. 1972) ...............................................................34

*Midwest Feeders, Inc. v. Bank of Franklin*,
  886 F.3d 507 (5th Cir. 2018) ..........................................................35

*NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*,
  513 U.S. 251 (1995).....................................................................34

*Nemec v. Shrader*,
  991 A.2d 1120 (Del. 2010) .............................................................28

*Osgood v. State*,
  310 A.3d 415 (Del. 2023) ..............................................................27

*Parduhn v. Bennett*,
  61 P.3d 982 (Utah 2002) ...............................................................24

*Petroplast Petrofisa Plasticos S.A. v. Ameron Int'l Corp.*,
  No. 4304-VCP, 2012 Del. Ch. LEXIS 172 (Del. Ch. July 31, 2012) ...............22

*PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Tr.*,
  28 A.3d 1059 (Del. 2011) ..............................................................37

*Quinn v. Catholic Knights*,
  41 S.W. 343 (Tenn. 1897).............................................................37

*Rabkin v. Ore. Health Scis. Univ.*,
  350 F.3d 967 (9th Cir. 2003) ..........................................................17

*Richard v. Wal-Mart Stores, Inc.*,
  559 F.3d 341 (5th Cir. 2009) .......................................................23, 24

*State ex rel. Brown v. Grosch*,
  152 S.W.2d 239 (Tenn. 1941) .........................................................34

*Sweetwater Point, LLC v. Kee*,
    No. S18C-06-012 RFS, 2020 Del. Super. LEXIS 2882
    (Del. Super. Ct. Nov. 5, 2020) .................................................................23

*Terr. of the U.S. V.I. v. Goldman, Sachs & Co.*,
    937 A.2d 760 (Del. Ch. 2007) ..................................................................22

*Tzaras v. Evergreen Int'l Spot Trading, Inc.*,
    No. 01 Civ. 10726 (LAP), 2003 U.S. Dist. LEXIS 2707
    (S.D.N.Y. Feb. 25, 2003) .........................................................................35

*U.S. Bank, N.A. v. Estate of Albart*,
    No. 2020-CA-000762AX, 2024 WL 1520570 (Fla. Cir. Ct. Apr. 3, 2024) .......37

*United States v. Cohen*,
    617 F.2d 56 (4th Cir. 1980) ......................................................................33

*Wabakken v. Cal. Dep't of Corr.*,
    801 F.3d 1143 (9th Cir. 2015) ..................................................................17

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*,
    860 A.2d 312 (Del. 2004) ...................................................................21, 23

*Warnock v. Davis*,
    104 U.S. 775 (1881) ..................................................................................36

*Webster v. Brosman*,
    No. N19C-04-170 ALR, 2019 Del. Super. LEXIS 533 (Del. Super. Ct.
    Oct. 29, 2019) ..........................................................................................22

*Wells Fargo Bank, N.A. v. Est. of Malkin*,
    278 A.3d 53 (Del. 2022) .....................................................................passim

**STATUTES**

6 Del. C. § 8-115 .........................................................................10, 11, 33

6 Del. C. § 8-503 .............................................................................8, 26, 28

10 Del. C. § 8106 ....................................................................................passim

18 Del. C. § 2704(b) ................................................................................passim

11 U.S.C. § 550(a) .................................................................................29, 32

vii

28 U.S.C. § 1291 .......................................................................................5

28 U.S.C. § 1332(a) ..................................................................................5

Cal. Com. Code § 8115 ...........................................................................10

N.Y. U.C.C. § 8-102(a)(14)(b) .................................................................1

National Banking Act, 12 U.S.C. § 21 *et seq.* ......................................34

Neb. Rev. Stat. § 8-503(a) ......................................................................32

U.C.C. § 8-102(a)(14)(ii) ..........................................................................8

U.C.C. § 8-115 ..............................................................................9, 10, 33

U.C.C. § 8-503 .....................................................................................8, 26

Utah Code Ann. § 31A-21-104(6)(b) .....................................................24

**INTRODUCTION**

The United States District Court for the Central District of California (the "District Court") denied Defendant-Appellant Wells Fargo Bank, N.A., as Securities Intermediary's ("Securities Intermediary")[1] motion for summary judgment by refusing to apply the three-year statute of limitations in 10 *Del. C.* § 8106(a) ("Section 8106") for actions based on a statute to claims for the recovery of insurance proceeds under 18 *Del. C.* § 2704(b) ("Section 2704(b)").[2] In dicta, the District Court went even further, suggesting such claims may not be subject to *any* limitations period. It erred. Although no Delaware court has ruled on this issue, the statutory language and prevailing Delaware case law demonstrate Section 8106's three-year limitations period applies to claims brought under Section 2704(b). Section 8106 governs actions based on a statute, and there is no sound justification to exclude Section 2704(b)—a statute—from its reach. Accordingly, Securities Intermediary respectfully submits the District Court's denial of its motion for summary judgment should be reversed.

On February 22, 2018, following the death of Joseph H. Daher (the "Insured"), Securities Intermediary, acting in its limited role as a directed service provider and

---

[1] At all times, Wells Fargo Bank, N.A. acted solely in a ministerial capacity as Securities Intermediary for a third-party investor and did not act in its individual capacity. *See, e.g.,* N.Y. U.C.C. Law § 8-102(a)(14)(b) (defining a securities intermediary's role).

[2] 1-ER-18–20 (hereinafter referred to as the "SI Summary Judgment Order").

nominee for the beneficial owner of the Insured's life insurance policy, received roughly $5 million in life insurance proceeds from American General Life Insurance Company ("American General") and immediately transferred that payment to the policy's beneficial owner, LSH CO. ("LSH"). More than three years after the payment of the proceeds to LSH on April 14, 2021—outside of the limitations period applicable to claims based on a statute—Plaintiff-Appellee Estate of Jospeh H. Daher ("the Estate")[3] initiated an action to recover the policy proceeds pursuant to Section 2704(b).[4]

The Estate's claim, which was "based on a statute" (Section 2704(b)), was clearly time-barred under Section 8106. However, in denying Securities Intermediary's motion for summary judgment, the District Court incorrectly reasoned that "actions based on a statute" encompass only statutory claims not actionable at common law prior to codification.[5] This misreads well-established Delaware law defining "actions based on a statute" to encompass actions seeking the recovery of money or property—which is precisely what the Estate's claim sought.

---

[3] The Estate is represented by Christine Daher, the daughter of the Insured.

[4] Section 8106 states that "no action based on a statute . . . shall be brought after the expiration of 3 years from the accruing of the cause of such action."

[5] 1-ER-19–20.

In any event, even if this Court agrees with the District Court that actions pursuant to Section 2704(b) are not "actions based on a statute," the District Court's decision warrants reversal because it misapplied Delaware law in its laches analysis.[6] The District Court's laches analysis focused solely on prejudice to Securities Intermediary without first determining whether a statute of limitations applies to bar an analogous claim.[7] This is contrary to the analysis mandated by Delaware law. *See Burkhart v. Genworth Fin., Inc.*, 250 A.3d 842, 858-59 (Del. Ch. 2020) (noting that a proper laches analysis must apply the statute of limitations from an analogous claim, and if no such claim exists, apply the traditional laches analysis where the court evaluates prejudice). Applying the proper analysis would have revealed that Section 2704(b) claims are analogous to unjust enrichment and constructive trust claims, both of which are governed by Section 8106's three-year limitations period. Like unjust enrichment claims and constructive trust claims, Section 2704(b) claims involve recovering benefits improperly retained without entitlement. Accordingly, under the Delaware laches analysis, Section 8106 applies by analogy, barring the Estate's claim.

In addition to the misapplication of the limitations period, the District Court further erred in deeming Securities Intermediary a "payee" of the policy proceeds

---

[6] 1-ER-19–20.

[7] 1-ER-20.

3

under Section 2704(b).[8]  The District Court held that Securities Intermediary's mere transfer of policy proceeds rendered it a "payee" under Section 2704(b), thereby establishing liability for monies Securities Intermediary immediately transmitted to the beneficial owner and never possessed title to or claim over.[9]  Such an interpretation of "payee" misreads Section 2704(b) and stretches it beyond its intent, imposing liability on banks for performing routine intermediary functions, contrary to common law protections and statutory norms.  Accordingly, Securities Intermediary respectfully requests this Court reverse the District Court's denial of Securities Intermediary's motion for summary judgment.

Finally, the District Court erred in denying offset of premiums paid by prior beneficial owners other than the Insured or his family to maintain the policy, which resulted in a windfall to the Estate.[10]  The District Court failed to consider Securities Intermediary's argument that it was automatically entitled to a premium offset, as allowed under common law.  This error is worsened by the District Court's own determination that Section 2704(b) codified the common law, which limits recovery

---

[8] 1-ER-20–22.

[9] *Id*.

[10] This portion of the appeal pertains to the District Court's Order and Judgment on the Estate's motion for summary judgment.  (1-ER-11–12, hereinafter the "Order and Judgment".)  Securities Intermediary's appeal regarding the District Court's rulings on the statute of limitations and its designation of Securities Intermediary as a "payee" under Section 2704(b) pertains to the SI Summary Judgment Order.

to the policy's death benefit minus any premiums paid by third parties to maintain the policy.  Thus, the District Court erred by ordering Securities Intermediary to pay to the Estate an amount equal to the policy proceeds without applying a premium offset.

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

The District Court entered final judgment on July 23, 2024 and Securities Intermediary timely filed a notice of appeal on August 21, 2024.  This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED

1.   Did the District Court err when it held that the Estate's claim under Delaware's Insurable Interest statute, Section 2704(b), is not time-barred under Section 8106's three-year limitations period, even though it is undisputed that the claim was filed more than three years after Securities Intermediary facilitated the transfer of the policy proceeds from American General to LSH?

2.   Did the District Court err when it held that Securities Intermediary is liable under Section 2704(b) as a "payee," even though Securities Intermediary

5

acted solely as a directed service provider and nominee, transferring the policy proceeds immediately to LSH without ever holding any right or entitlement to the funds?

3.  Did the District Court err when it held that Securities Intermediary is not entitled to a premium offset, despite its previous ruling that 2704(b) codified the common law and, under the common law, premiums paid by third parties to maintain a void life insurance policy are automatically offset against any recovery by the insured or the insured's beneficiaries?

## STATEMENT OF THE CASE

### I.    FACTUAL BACKGROUND

On March 20, 2006, the Insured, as settlor, formed the Joseph Daher Insurance Trust (the "Trust") to apply for and obtain a life insurance policy on his own life. (3-ER-271, -277.)   American General issued the subject life insurance policy, UM0023726L (the "Policy"), on the Insured shortly thereafter. (2-ER-223, -242.) The Trust was identified as the beneficial owner and beneficiary of the Policy at the time of application. (2-ER-224.)   Christine Daher, the Insured's daughter and personal representative of the Estate in this litigation, was the co-Trustee and beneficial owner of the Trust and, consequently, also the beneficiary of the Policy. (3-ER-271–76.)   Neither Securities Intermediary nor LSH had any involvement in

the creation of the Trust or in the application for or the procurement of the Policy. (*See* 4-ER-518, ¶ 2.)

To fund the payment of premiums, the Trust, through the Insured and Christine Daher, obtained a loan from LaSalle Bank. (3-ER-255–65.) While the Trust owned the Policy, neither the Insured nor Christine Daher personally contributed any money toward premiums: the entire $597,300 in premiums paid while the Trust held the Policy was funded solely through the LaSalle Bank loan. (2-ER-188–92; 3-ER-312–13.)

In 2008, the Insured and Christine Daher, acting as co-Trustee, sold the Policy on the secondary market to QL Investment Alpha Trust Series, transferring beneficial ownership of the Policy. (2-ER-82–187.) The Policy was sold for $960,000, $877,606.51 of which went to satisfy the loan to LaSalle Bank. (2-ER-127, -129.) Christine personally profited $50,000 from the sale. (2-ER-129; 3-ER-326–28.) Securities Intermediary had no involvement in the transfer of the Policy.

Following its purchase of the policy, in 2010, QL Investment Trust Alpha retained beneficial ownership of the Policy but transferred nominal title to Securities Intermediary so it could act as the Policy's securities intermediary and nominal record owner with the Insurer. (4-ER-518, ¶¶ 2-3; 4-ER-531–35.) A securities intermediary is "a person, including a bank or broker, that in the ordinary course of its business maintains securities accounts for others and is acting in that capacity."

7

U.C.C. § 8-102(a)(14)(ii). Securities Intermediary served in this role, with brief lapses in record ownership, until the Policy's termination upon the Insured's death in December 2017. (4-ER-519–20, ¶¶ 7-10.) During this period, the Policy was sold multiple times to various beneficial owners before LSH ultimately acquired beneficial ownership of the Policy in 2012. (3-ER-341–45; 4-ER-518–19, ¶ 4.)

It is undisputed that Securities Intermediary's role with respect to the Policy was purely administrative. (3-ER-364–65, ¶ 2.1; 3-ER-415–16, 16:6-18, 18-20:6.) As specified in the Securities Account Control Agreement between Securities Intermediary and LSH, Securities Intermediary held no legal rights to or beneficial interest in the Policy or its proceeds:

> Wells Fargo shall be registered as the owner and beneficiary of such Policy on the records of such Insurer, it being understood that any Policy so titled shall continue to be held by Wells Fargo solely in its capacity as the Securities Intermediary hereunder and that Wells Fargo shall not have any beneficial ownership in any of such Policies.

(3-ER-364–65, ¶ 2.1.) Indeed, it is a central tenet that financial assets "held by the securities intermediary are held by the securities intermediary for the entitlement holders, [and] are not property of the securities intermediary." 6 Del. C. § 8-503; *see also* U.C.C. § 8-503 (noting that securities intermediaries hold "financial assets[s]" "for the entitlement holders [and they] are not property of the securities intermediary."). Securities Intermediary's role was confined to tasks like monitoring premium payments to the carrier and acting on similar administrative instructions

from LSH regarding the Policy. (3-ER-369–72, ¶¶ 4.2, 4.4(a); 3-ER-416, -419, 18:1-9, 32:20-33:8.) As the U.C.C. notes, securities intermediaries perform the "clerical or ministerial role of implementing and recording the securities transactions that their customers conduct" which "consists of following the [customer's] instructions . . . . It is not the [securities intermediary's] role . . . to police whether the transactions recorded are appropriate . . . ." U.C.C. § 8-115 cmt. 5.

The Policy matured upon the Insured's death in December 2017. (4-ER-519, ¶ 5.) A policy servicer hired by LSH (the beneficial owner) submitted the Insured's death certificate to American General and directed transmission of the Policy proceeds to Securities Intermediary. (4-ER-519, ¶ 6.) On February 22, 2018, the Policy's proceeds of $5,010,137.26 were transmitted by check to Securities Intermediary as the record owner and immediately transferred to LSH by deposit into LSH's bank account the same day. (4-ER-519–20, ¶¶ 7-10.) LSH then transferred the proceeds out of that account to an account at ABN AMRO Bank on March 30, 2018. (4-ER-520, ¶ 10.) It is undisputed that Securities Intermediary did not "receive" any "benefits" from the Policy, and never held a possessory interest in the Policy or its proceeds.

It is further undisputed that the Estate would profit substantially if awarded the full $5 million in Policy proceeds. The Estate and the Insured did not pay a penny of the $2,572,153 in premiums paid to maintain the Policy, and Christine

9

Daher profited $50,000 from selling the Policy. (2-ER-188–192; 3-ER-312–313, 326–28.) Had the Insured retained the Policy and paid the premiums himself, the Estate would have netted $2,437,984.26 in profit, representing the Policy proceeds ($5,010,137.26) minus the premiums paid ($2,572,153). (*Id.*) Instead, under the District Court's Order and Judgment, the Estate now stands to receive the entire $5 million in Policy proceeds.

## II. PROCEDURAL BACKGROUND

On April 14, 2021, more than three (3) years after the Policy proceeds were paid, the Estate filed a complaint in the District Court seeking recovery of the insurance proceeds under Section 2704(b) against LSH and Securities Intermediary. (4-ER-670.) On December 15, 2021, the Court dismissed LSH for lack of personal jurisdiction. (4-ER-631–37.)[11]

Securities Intermediary moved to dismiss the Estate's claim as time-barred and on the grounds that its role as an intermediary precluded liability under Cal. Com. Code § 8115 or, alternatively, under 6 *Del. C.* § 8-115 ("Section 8-115"). (4-ER-663–65.) In ruling on Securities Intermediary's motion to dismiss, the District Court determined that the three-year statute of limitations for claims arising under a statute pursuant to Section 8106 applies to the Estate's Section 2704(b) claim. (4-

---

[11] Securities Intermediary also moved for dismissal of Plaintiff's unjust enrichment claim, which the District Court granted. (4-ER-640–41.)

ER-639.) Accordingly, the District Court reasoned: "If Wells Fargo, indeed, received the death benefit in February[] 2018, the Estate's claims, here, would be barred because this action was filed on April 14, 2021 – more than three years later." (*Id.*) The District Court, however, did not dismiss the Estate's Section 2704(b) claim because the "Estate's complaint did not allege a specific date that Wells Fargo received the Policy's death benefit." (4-ER-639–40.) The District Court also deferred decision on Securities Intermediary's statutory defense under Section 8-115 pending the Delaware Supreme Court's decision on certified questions concerning the same statutory defense in a separate case, *Wells Fargo Bank, N.A. v. Est. of Malkin*, 278 A.3d 53 (Del. 2022). (4-ER-641–43.)

On May 26, 2022, the Delaware Supreme Court held that Section 8-115 "does not apply to an [e]state's claim under Section 2704(b)." *Malkin*, 278 A.3d at 67. The Delaware Supreme Court reasoned that such immunity applies only to "adverse claims" involving property rights—rights that are inapplicable to STOLI proceeds, as no one can hold a "property interest" in an illegal wagering policy. *Id*. Notably, *Malkin* did not hold that a securities intermediary qualified as a "payee" under Section 8106, acknowledging instead that "a securities intermediary who merely acts on the instructions of the beneficial owner of a STOLI policy and credits the policy proceeds to the beneficial owner's account is unlikely to face ultimate liability under Section 2704(b)." *Id*.

11

After further discovery, Securities Intermediary moved for summary judgment on December 20, 2022, again arguing that the Estate's Section 2704(b) claim was time-barred under Section 8106 in light of undisputed evidence the Policy proceeds were transferred to Securities Intermediary and paid to LSH on February 22, 2018.  (3-ER-496.)  Contrary to its earlier reasoning in the motion to dismiss order, the District Court reversed course in the SI Summary Judgment Order and held that Section 2704(b) claims are not subject to Section 8106's three-year limitations period.  (1-ER-19–20.)

The District Court also rejected Securities Intermediary's argument that it is not a "payee" under Section 2704(b).  (1-ER-20–22.)  Engaging in its own statutory interpretation, the District Court interpreted the plain meaning of "payee" as applying broadly to "any *transferee* of those benefits," thereby rejecting immunity for directed service providers like Securities Intermediary, and any other entity that touches the benefits, even where such a transferee simply transfers proceeds without any right or entitlement to the funds.  (*Id*.)

On January 9, 2024, the Estate moved for summary judgment.  (2-ER-193.)  In its opposition to that motion, Securities Intermediary argued that if found liable under Section 2704(b), the Estate's recovery of the Policy proceeds should be reduced by the premiums paid to maintain the Policy by third parties, consistent with common law principles that prevent a party from profiting off an illegal wagering

policy. (2-ER-71–72.) The District Court ignored this argument, considering only the right to an offset under a theory of unjust enrichment, and denied offset of the premiums. (1-ER-11–12, -14.) On July 23, 2024, the District Court granted the Estate's summary judgment motion, awarding the Estate the Policy proceeds without any premium offset. (*Id.*)

Securities Intermediary timely filed an appeal, challenging both the SI Summary Judgment Order and the District Court's Order and Judgment. (4-ER-700.)

## SUMMARY OF THE ARGUMENT

I.  The District Court erred in holding that Section 8106's three-year statute of limitations does not apply to the Estate's Section 2704(b) claim. Initially, in response to Securities Intermediary's motion to dismiss, the District Court held that Section 8106 applied because the Estate's 2704(b) claim is statutory. However, in the SI Summary Judgment Order, the District Court reversed its own position, holding that Section 8106 does not apply because a Section 2704(b) claim is not an "action based on a statute." (1-ER-18–20.) Citing a decades-old divorce case, *Butler v. Butler*, 222 A.2d 269, 272 (Del. 1966), the District Court reasoned that "an action based on a statute" only covers statutory claims that were not rooted in the common law. (*Id.*) The District Court then concluded that Section 2704(b) codified the common law and is therefore not governed by the limitation period in

13

Section 8106.

The District Court's decision misreads *Butler*, which focuses on the type of relief sought, ***not the origin of the right***. An "action based on a statute" encompasses statutory actions that seek the recovery of money or property—like the Estate's Section 2704(b) claim to recover Policy proceeds. The District Court thus erred and its judgment against Securities Intermediary should be reversed.

Even if Section 2704(b) is not an "action based on a statute," the District Court misapplied Delaware's laches doctrine in holding that laches did not bar the Estate's Section 2704(b) claim. Under Delaware law, courts applying laches first determine whether the claim at issue can be analogized to similar claims, and, if so, adopt the limitations period applicable to such claims. Delaware courts do not reach the issue of prejudice without first considering whether to adopt the limitations period for an analogous claim. Here, the District Court skipped that crucial step.

Section 2704(b) claims are analogous to claims of unjust enrichment and constructive trust, both of which are subject to Section 8106's three-year limitations period. Delaware courts would therefore apply the three-year limitations period for claims of unjust enrichment and constructive trust to the Estate's 2704(b) claim. Had the District Court conducted the proper analysis, it would have found that the Estate's 2704(b) claim was time-barred. The District Court's judgment should be reversed because it misapplied the laches analysis.

14

II.     The District Court incorrectly held that Securities Intermediary is liable under Section 2704(b) despite its limited administrative role in transferring Policy proceeds from American General to LSH.  (1-ER-20–22.)  Acting solely as an intermediary nominee of the beneficial policyowner, Securities Intermediary received and promptly transferred the proceeds to LSH's bank account, without possessing any control over or legal claim to the funds.  The District Court nevertheless held that because Section 2704(b) applies to "beneficiar[ies], assignee[s], or other payee[s]," Securities Intermediary's involvement in transferring the proceeds qualified it as a "payee," thereby subjecting it to liability. (*Id.*)

This reading misinterprets Section 2704(b)'s language.  By permitting estates to "recover" benefits, Section 2704(b) limits liability to parties that possess or retain the disputed funds—not intermediaries who merely facilitate financial transfers without beneficial ownership.  Further, the District Court's interpretation diverges from Section 2704(b)'s purpose: to prevent profiting on human life wagering contracts, not to penalize banks performing routine administrative or ministerial tasks.

The District Court's interpretation equation of "payee" with any "transferee" also conflicts with well-established legal principles.  Terms like "transferee" under

15

similar statutes exclude banks acting purely as intermediaries. Under the common law, banks are not liable when performing services for customers if they lack control over or entitlement to the assets involved. The District Court's decision significantly expands liability for banks performing standard intermediary functions, with no indication that Delaware intended such a drastic expansion of liability. The District Court's decision should be reversed for this reason as well.

III. Finally, the District Court erred by failing to offset the premiums paid against the awarded Policy proceeds. (1-ER-11–12.) According to the District Court, the Delaware Supreme Court in *Malkin* held Section 2704(b) codifies the common law and allows defendants to claim a premium offset if they can establish entitlement under a "viable legal theory." *Malkin*, 278 A.3d at 67-70. Under the common law, a plaintiff challenging a purported stranger-oriented life insurance policy could bring an action to recover a policy's death benefit minus any premiums paid by third parties to maintain the policy. Since Section 2704(b) purportedly codifies this common law right, it follows that Securities Intermediary is entitled to the same offset for all premiums paid by parties other than the Insured. The District Court failed to analyze the availability of premium offset under this legal theory, which constitutes reversible error.

## STANDARD OF REVIEW

This Court reviews *de novo* the District Court's decision to grant summary judgment to the Estate and deny Securities Intermediary's summary judgment

motion, drawing all inferences in the light most favorable to the non-moving party. *See, e.g., Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821, 825 (9th Cir. 2001); *Wabakken v. Cal. Dep't of Corr.*, 801 F.3d 1143, 1147 (9th Cir. 2015). "When de novo review is compelled, no form of appellate deference is acceptable." *Rabkin v. Ore. Health Scis. Univ.*, 350 F.3d 967, 970 (9th Cir. 2003). Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact. *Wabakken*, 801 F.3d at 1147.

## ARGUMENT

**I. THE DISTRICT COURT ERRED IN HOLDING THAT SECTION 8106'S THREE-YEAR STATUTE OF LIMITATIONS DID NOT APPLY TO THE ESATE'S SECTION 2704(B) CLAIM.**

### A. The District Court misinterpreted Butler.

In its motion to dismiss order, the District Court determined that the three-year statute of limitations in Section 8106 applies to Section 2704(b) claims, but declined to dismiss the Estate's Section 2704(b) claim citing a lack of evidence regarding when the statute was triggered. (4-ER-639–640.) The District Court explained:

> If Wells Fargo, indeed, received the death benefit in February, 2018, the Estate's claims, here, would be barred because this action was filed on April 14, 2021 – more than three years later. However, at this juncture, the Estate could still prove that its claims were timely if it can establish that Wells Fargo received the Policy's death benefit on or after April 14, 2018.

17

(*Id*.)  Roughly 18 months later, the District Court reversed course.  In denying Securities Intermediary's summary judgment motion—which set forth undisputed evidence of when the death benefit was received—the District Court held that "[Section] 8106(a)'s statute of limitations does not apply to [Section] 2704(b) claims." (1-ER-19.)  The District Court is mistaken.

> Section 8106(a) states:
>
> No action to recover damages for trespass, no action to regain possession of personal chattels, no action to recover damages for the detention of personal chattels, no action to recover a debt not evidenced by a record or by an instrument under seal, no action based on a detailed statement of the mutual demands in the nature of debit and credit between parties arising out of contractual or fiduciary relations, no action based on a promise, **no action based on a statute**, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant **shall be brought after the expiration of 3 years from the accruing of the cause of such action**; subject, however, to the provisions of §§ 8108-8110, 8119 and 8127 of this title.

10 Del. C. § 8106(a) (emphasis added.)  The District Court based its reasoning on a single 1966 family law case, *Butler v. Butler*, 222 A.2d 269 (Del. 1966).  According to the District Court, *Butler* held that an "action based on a statute" does not encompass statutes where the "right" protected was "enforceable by action in the courts which finds its roots in the common law." (1-ER-19.)  The District Court cited *Malkin* for the proposition that Section 2704(b) codified a pre-existing common law right.  (*Id*.)

18

This analysis relies on a misunderstanding of *Butler*. The court in *Butler* held:

> The . . . phrase, 'action based on a statute,' refers only to such actions in which the object sought is either the recovery of money or property. **We so hold**. This means that there is in our statutes no general or specific statute of limitation which may be raised as a defense to an action for divorce.

222 A.2d at 272 (emphasis added.) There was discussion, in dicta, where the Court mused that Section 8106 does not apply to statutes that codify "a right enforceable by action in the courts which finds its roots in the common law." *Id*. However, the *Butler* court also observed in dicta that the *noscitur a sociis* canon indicates that the phrase "'action based on a statute' relates to a common law action for the recovery of money or property since all the other items of [Section] 8106, relate to common law actions for the recovery of money or property." *Id*. at 271. The clear holding in *Butler* is that Section 8106 applies to statutory actions seeking monetary recovery, regardless of whether the right is rooted in common law.

This interpretation is supported by the facts of the *Butler* case itself. The *Butler* court specifically held that divorce actions are not subject to Section 8106 because a suit for divorce was not an action based on "the recovery of money or property," not because divorce was a right rooted in common law. *See id*.

Moreover, the Delaware Chancery Court has found that "under *Butler*, the applicability of [Section] 8106(a) turns on whether the statutory claim constitutes an 'action to recover money or property.'" *FOP Lodge No. 15 v. City of Dover*, No.

19

16654, 1999 Del. Ch. LEXIS 224, at *7 (Del. Ch. Dec. 10, 1999) (determining that the claim at issue was not governed by Section 8106(a) because it was not a claim for the recovery of money). Consequently, courts have recognized that claims under Section 2704(b) qualify as "actions based on a statute" making them subject to Section 8106's three-year statute of limitations. *See, e.g.*, *Est. of Malkin v. Wells Fargo Bank, N.A.*, 379 F. Supp. 3d 1263, 1282 (S.D. Fla. 2019), *aff'd in part, vacated in part*, 998 F.3d 1186 (11th Cir. 2021), *certifying question sub nom. Wells Fargo Bank, N.A. v. Est. of Malkin*, 278 A.3d 53 (Del. 2022), and *aff'd in part, vacated in part, remanded sub nom. Est. of Malkin v. Wells Fargo Bank, NA*, No. 19-14689, 2022 U.S. App. LEXIS 17341 (11th Cir. June 23, 2022) (finding that the action under Section 2704(b) "was filed within the three-year limitations period for statutory claims under [Section 8106(a)]"); *see also Est. of Frank v. GWG DLP Master Tr. Dated 03/01/06*, No. 23-cv-00584-JLH, 2024 U.S. Dist. LEXIS 174353, at *2-4 (D. Del. Sept. 26, 2024) (noting that while "the Delaware Supreme Court has never answered the question of what limitations period (if any) applies to a claim by an estate under § 2704(b) . . . Defendants make a good argument that the claim is subject to the three-year limitations period in 10 Del. C. § 8106(a).").

This case is undeniably "an action to recover money"—the Policy's death benefit—and thus falls within Section 8106(a), as interpreted by *Butler*. The undisputed evidence establishes that Securities Intermediary received the death benefit check in the amount of $5,010,137.26 on February 22, 2018, and

immediately deposited it into LSH's bank account, which was maintained by Securities Intermediary. (4-ER-520, ¶¶ 8-10.) At that point, the claim accrued, as the Section 8106 limitations period begins to run "at the time of the [alleged] wrongful act." *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004). The Estate did not bring an action to recover the contested Policy proceeds until more than three years after that date. Accordingly, the Estate's suit against Securities Intermediary is time-barred, and the District Court's judgment should be reversed.

B.   <u>The District Court erred in concluding that laches did not bar the Estate's Section 2704(b) claim.</u>

Even if the three-year statute of limitations encompassed in Section 8106 does not apply to Section 2704(b) claims, the District Court erred in concluding that the doctrine of laches did not bar the Estate's suit. (1-ER-20.) The District Court held that the undisputed facts "appear to foreclose a laches defense because of a lack of prejudice to Wells Fargo." (*Id.*) However, Delaware law requires courts to first determine whether a statute of limitations exists for analogous claims; only if no statute of limitations is identified should courts apply a "traditional" laches analysis focusing on prejudice. *Leb. Cnty. Employees' Ret. Fund v. Collis*, 287 A.3d 1160, 1195 (Del. Ch. 2022) ("The first element of the laches analysis is whether a plaintiff has delayed unreasonably in bringing the claim. Because the plaintiffs seek money

damages, the court looks to the limitations period that would govern a comparable claim at law.  A filing after the expiration of the analogous limitations period is presumptively an unreasonable delay for purposes of laches.") (citations omitted); *Heritage v. Bd. of Educ.*, 447 F. Supp. 1240, 1244 (D. Del. 1978) (applying Section 8106 to a common law claim for breach of duty of fair representation "based upon the cumulative effect of the language 'based on a promise,' 'based on a statute,' and 'caused by an injury unaccompanied with force,' that appears within [S]ection 8106").[12]  The determination of an analogous statute of limitations depends on the similarity of the elements of the claims and the type of relief sought.  *See, e.g.*, *Terr. of the U.S. V.I. v. Goldman, Sachs & Co.*, 937 A.2d 760, 807 (Del. Ch. 2007) ("Moreover, the Virgin Islands seeks money damages which is usually an action at

---

[12] *See also Petroplast Petrofisa Plasticos S.A. v. Ameron Int'l Corp.*, No. 4304-VCP, 2012 Del. Ch. LEXIS 172, at *42-43 n.103 (Del. Ch. July 31, 2012) ("The general rule is that absent a tolling of the limitations period, a party's failure to file within an analogous statute of limitations, if any, is typically conclusive evidence of laches."); *Webster v. Brosman*, No. N19C-04-170 ALR, 2019 Del. Super. LEXIS 533, at *7-8 (Del. Super. Ct. Oct. 29, 2019) ("Where the relief sought from an accounting is merely the recovery of money, the case is analogous to an action for monetary damages.  In such cases, the court applies the equivalent statute of limitations by analogy.  The statute of limitations for a breach of fiduciary duty is three years."); *Andor Pharms., LLC v. Lannett Co.*, No. N22C-06-078-EMD CCLD, 2024 Del. Super. LEXIS 359, at *25 (Del. Super. Ct. Apr. 15, 2024) ("The analogous statute of limitations for a reformation claim is the three-year statute for breach of contract."); *Burkhart,* 250 A.3d at 858-59 (noting that a proper laches analysis must apply the statute of limitations from an analogous common law claim, and if no such claim exists, apply the traditional laches analysis where the court evaluates prejudice).

law that would generally be subject to the three-year limitation period of 10 Del. C. § 8106.").

Here, as in *Heritage*, the Estate's claim is analogous to several common law causes of action that are reflected in various parts of Section 8106. For example, in allowing an estate to recover the insurance benefit from the payee, Section 2704(b) is analogous to a claim for unjust enrichment, which is governed by a three-year statute of limitations under Section 8106(a). *See Wal-Mart Stores, Inc.*, 860 A.2d at 319 (recognizing that a claim for unjust enrichment is subject to the three-year statute of limitations under Section 8106(a)); *Sweetwater Point, LLC v. Kee*, No. S18C-06-012 RFS, 2020 Del. Super. LEXIS 2882, at *19 (Del. Super. Ct. Nov. 5, 2020) ("[T]he applicable statute of limitations for claims arising from a promise and for unjust enrichment is that provided in [Section 8106(a)].").

In *Richard v. Wal-Mart Stores, Inc.*, 559 F.3d 341 (5th Cir. 2009), the Fifth Circuit held that an estate's claim under Louisiana Revised Statute Ann. § 22:901(B), Louisiana's version of Section 2704(b), is analogous to an unjust enrichment claim and, therefore, subject to the statute of limitations for unjust enrichment. *Id*. at 344 n.1, 345 (comparing elements of unjust enrichment claim to the estate's claim under Louisiana Revised Statute Ann. section 22:901(B)). The Court reasoned that both claims are analogous because they address the wrongful

23

retention of benefits, empowering plaintiffs to recover proceeds improperly obtained and retained by another party. *Id*.

The Estate itself alleged a claim for unjust enrichment in this action. (4-ER-698, ¶¶ 127-29.) As part of that claim, the Estate pled that "LSH's and/or Wells Fargo's acceptance and retention of the Policy's death benefit has enriched LSH and/or Wells Fargo, to the detriment of the Estate," demonstrating the similarity between a Section 2704(b) claim and unjust enrichment. *Id*. Indeed, the District Court dismissed the unjust enrichment claim with prejudice based, in part, on the overlap between that claim and the Section 2704(b) claim. (4-ER-640–41.)

Section 2704(b) is also analogous to a claim for a constructive trust, which likewise falls under Section 8106's three-year limitations period. *See East v. Tansey*, No. 1592, 1993 Del. Ch. LEXIS 247, at *5 (Del. Ch. Oct. 22, 1993) (holding Section 8106(a) "governs an action to impose a constructive trust"); *Adams v. Jankouskas*, 452 A.2d 148, 152 (Del. 1982) (describing circumstances for imposing a constructive trust). Under Utah law, for example, a plaintiff can recover the proceeds of a policy that lacks an insurable interest if she or he is "equitably entitled" and authorizes a court to "create a constructive trust . . . on behalf of such a person." *Parduhn v. Bennett*, 61 P.3d 982, 986-87 (Utah 2002) (citing Utah Code Ann. § 31A-21-104(6)(b)). Delaware law expressly allows an estate to maintain an action to recover the insurance benefit on a policy that lacks an insurable interest. It thus

24

essentially imposes a constructive trust on the benefits paid to the "beneficiary, assignee, or other payee." 18 *Del*. C. 2704(b).[13]

The Estate's counsel agrees. A complaint the Estate's counsel filed in Delaware Court of Chancery earlier this year explained that "under longstanding common law, when a person or entity receives the proceeds of an illegal human life wagering policy, that person or entity is deemed to hold such proceeds in constructive trust for the insured's estate" and that securities intermediaries were "constructive trustees of the Policy's proceeds for the benefit of the Estate." *See* Complaint to Impose a Constructive Trust and Other Equitable Relief, *Est. of Martha Barotz v. Wilmington Savings Fund Soc'y FSB*, No. 2024-0447-JTL, Dkt. 1 ¶¶ 148, 151 (Del. Ch. Apr. 26, 2024).

Thus, regardless of whether a claim under Section 2704(b) is deemed to be "based on a statute" or rooted in common law, the three-year statute of limitations under Section 8106 applies, and the Estate's claim is time-barred.

## II. THE DISTRICT COURT ERRED IN HOLDING THAT SECURITIES INTERMEDIARY CAN BE LIABLE DESPITE ACTING SOLELY AS A DIRECTED SERVICE PROVIDER.

The District Court wrongly imposed liability on Securities Intermediary under Section 2704(b), despite the fact that Securities Intermediary acted solely in a

---

[13] Notably, under Utah law, "imposition of a constructive trust requires that specific identifiable property be held by the defendant." *Lakeside Lumber Products, Inc. v. Evans*, 110 P.3d 154, 157 (Utah Ct. App. 2005) (citation omitted). But, as discussed below (*see infra* pp. 26-36), Securities Intermediary never retained the Policy's proceeds.

ministerial role to facilitate the transfer of Policy proceeds from American General to LSH. (1-ER-20–22.) Upon receiving the Policy proceeds on February 22, 2018, Securities Intermediary immediately transferred them to LSH's bank account. (4-ER-520, ¶¶ 8-9.) LSH then transferred those proceeds to an account at ABN AMRO Bank on March 30, 2018. (4-ER-520, ¶ 10.) At no point did Securities Intermediary exercise decisional control over or possess a legal right to the proceeds.[14]

Nevertheless, the District Court held that Securities Intermediary qualifies as a "payee" under Section 2704(b), thereby imposing liability on Securities Intermediary for performing routine intermediary services. (1-ER-20–22.) Relying on a Merriam-Webster Dictionary definition of "payee," the District Court concluded that Section 2704(b) "allow[s] estates to recover STOLI benefits from

---

[14] See 6 *Del*. C. § 8-503 ("[A]ll interests in [a] financial asset held by the securities intermediary are held by the securities intermediary for the entitlement holders, [and] are not property of the securities intermediary."); U.C.C. § 8-503 (noting that securities intermediaries hold "financial assets[s]" "for the entitlement holders [and they] are not property of the securities intermediary."); 3-ER-416, -419–20, 18:1-9, 33:14-36:9 (testifying that Securities Intermediary's role was strictly administrative, with no beneficial interest in the Policy); 3-ER-364–65 (the governing agreement between LSH and Securities Intermediary explicitly states that Securities Intermediary shall treat the beneficial owners "as the only parties entitled to exercise the rights that comprise any cash, financial asset or proceeds thereof" credited to the beneficial owners account, and Securities Intermediary shall deposit into [the beneficial owner's account] "all proceeds received in respect of Policies (including sale proceeds, death benefits and refunded premiums) . . . [w]ithin three (3) Business Days of receipt").

any *transferee* of those benefits." (*Id*.) But this simplistic interpretation misreads both the language and intent of Section 2704(b). It also contradicts established common law principles limiting the liability of intermediaries, particularly financial institutions following client directives, and could have additional unintended consequences. Accordingly, the District Court's decision should be reversed.

A.    The statutory language of Section 2704(b) excludes Securities Intermediary as a "payee."

As a threshold matter, the District Court erred in defining the word "payee" in "isolation" without consulting the "statute's [surrounding] words and phrases." *See Div. of Fam. Servs. v. O'Bryan*, 164 A.3d 58, 62 (Del. 2017); *see also Osgood v. State*, 310 A.3d 415, 420 (Del. 2023) ("[I]t might be tempting to jump immediately to the general definition of 'conviction' in the criminal statutes . . . But words in a statute should be given meaning through the context in which they are used.").[15]

Section 2704(b) empowers an estate to "recover" specific "benefits" (the Policy proceeds) paid by an insurer. The Legislature's use of the term "recover" suggests that the target party must possess or retain the funds in question. To recover something means to "find or regain possession of (something stolen or lost)," as in,

---

[15] For ease of reference, Section 2704(b) is reproduced here: "If the beneficiary, assignee or other payee under any contract made in violation of this section receives from the insurer any benefits thereunder accruing upon the death, disablement or injury of the individual insured, the individual insured or the individual's executor or administrator, as the case may be, may maintain an action to recover such benefits from the person so receiving them."

to "recover[] a stolen video" or to "recover a stolen watch." *Recover*, https://www.dictionary.com/browse/recover (last visited Dec. 2, 2024). The doctrine of unjust enrichment similarly restricts recovery to a party in possession of the disputed benefit: it allows a party "to **recover for any benefits** the [Plaintiff] provided to the Defendants without compensation," *McKenna v. Singer*, No. 11371-VCMR, 2017 Del. Ch. LEXIS 138, *55 (Del. Ch. July 31, 2017), but bars recovery from a defendant who never retained the benefit in question. *See Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010) ("Unjust enrichment is 'the unjust **retention** of a benefit to the loss of another, or the **retention** of money or property of another against the fundamental principles of justice or equity and good conscience.'") (emphasis added); *Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, No. 7906-VCG, 2014 Del. Ch. LEXIS 243, at *92 (Del. Ch. Nov. 26, 2014) ("A restitution remedy such as unjust enrichment, however, requires the party subject to the claim to hold the funds resulting from the Plaintiff's impoverishment.").

Here, the Estate cannot "recover" the "benefits" paid by the insurer from Securities Intermediary because Securities Intermediary never retained or possessed those "benefits." 6 *Del*. C. § 8-503 ("[A]ll interests in [a] financial asset held by the securities intermediary are held by the securities intermediary for the entitlement holders, [and] are not property of the securities intermediary."). Securities

Intermediary, therefore, does not meet the statutory requirement of receiving any benefits.

Further, the District Court's determination that Securities Intermediary could be liable as a "transferee" also overlooks how similar terms are interpreted in analogous contexts, where liability is typically limited to *transferees* with dominion or control over the funds. For example, under bankruptcy law, "an estate has broad powers . . . to avoid certain transfers of property made by the debtor either after or shortly before the filing of a bankruptcy petition" by permitting an estate to recover payment from "the *initial transferee* of such transfer or the entity for whose benefit such transfer [is] made." *Christy v. Alexander & Alexander Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 55-56 (2d Cir. 1997) (emphasis added); 11 U.S.C. § 550(a). Every Court of Appeals to consider whether an intermediary, like Securities Intermediary, qualifies as an "initial transferee" under Section 550(a) has "squarely rejected" that interpretation. *Christy*, 130 F.3d at 57. This is because imposing such liability on intermediaries for simply passing through funds would lead to "absurd results," such as potentially subjecting couriers, like an "armored car company," to liability. *Bonded Fin. Servs. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988). And this would only increase monitoring by intermediaries, the "costs of which would fall on solvent customers without significantly [decreasing human life wagering]." *Id.* As a result,

29

courts define "initial transferee" as an entity or person with "dominion and control" over the assets, meaning "the right to put the money to one's own purposes." *Id*. Section 2704(b)'s use of "payee" should also similarly be limited to entities that had "dominion and control" over the proceeds.

      B.   <u>The District Court's interpretation of "payee" undermines the policy intent of Section 2704(b).</u>

The District Court's interpretation of "payee" also does not square with the public policy purpose of Section 2704(b). Section 2704(b) was codified to prevent parties from unlawfully benefitting from an insurance contract made without an insurable interest. *See Malkin*, 278 A.3d at 59-60. Targeting those who actually "receive[d] benefits" (*i.e.*, the Policy proceeds as a return on investment), rather than neutral intermediaries who facilitate transfers without personal entitlement, more closely aligns with this purpose. *Malkin* supports this reasoning, favorably recounting the trial court's observation that "to the extent that Wells Fargo, after receiving the Policy proceeds, merely passed them on in full to Berkshire, Wells Fargo would appear to have no liability." *Id*. at 67; *see also Garrett v. Viva Cap. 3, L.P.*, No. 3:22-cv-89(RNC), 2024 U.S. Dist. LEXIS 156914, at *4 (D. Conn. Aug. 31, 2024) (rejecting plaintiff's argument that it can proceed solely against securities intermediary because the beneficial owner who received the STOLI proceeds is not a "required" party under Rule 19(a), since it is "far from clear" whether securities intermediary "is jointly and severally liable under Section 2704(b)" as a "payee");

30

*Est. of Frank*, 2024 U.S. Dist. LEXIS 174353, at *4 (holding that the trust itself, and not its trustee, was the "payee" of the proceeds and that "public policy" does not "dictate a different result").[16]  Limiting "payee" to parties who hold some beneficial entitlement or dominion over the funds enforces the statute's goal of disincentivizing human life wagering without penalizing innocent intermediaries.

C.    Interpreting "payee" to include Securities Intermediary contravenes the common law principles Section 2704(b) purportedly codifies and general principles of tort law.

Finally, the District Court's interpretation of "payee" to include Securities Intermediary contradicts established common law protections for intermediaries, particularly for banks acting under the direction of their customers.  Under long-standing common law principles, intermediaries who simply follow the instructions of bailors are generally shielded from liability as mere facilitators.

For example, the District of Nebraska cited this principle in granting summary judgment to Article 8 intermediaries on a conversion claim in *COR Clearing, LLC v. Calissio Res. Grp., Inc*., No. 8:15CV317, 2017 U.S. Dist. LEXIS 183405, at *29-30 (D. Neb. Nov. 6, 2017).  The court dismissed the claim for the simple reason that the money at issue *was not theirs to convert* explaining:

---

[16] In fact, after initially denying Securities Intermediary's summary judgment on this issue, the District Court later appeared to concede this point in its Order and Judgment, noting that, under *Malkin*, Securities Intermediary would not be a "payee" subject to 2704(b) liability if it had "passe[d] along 100% of a STOLI policy's death benefit to another party," which it indisputably did here.  (1-ER-7.)

COR has not established the elements of a conversion claim. ***The evidence shows that the brokers did not have possession, dominion, or control over the payments on the due bill credits***. It is undisputed that the DTC assessed and allocated the due bill credits and the brokers immediately credited the payments to their customers or clients . . . ***Under the Nebraska U.C.C. property interests in financial assets held by a securities intermediary are held by the securities intermediaries 'for the entitlement holders,' and 'are not property of the securities intermediary.'*** Neb. Rev. Stat. (U.C.C.) § 8-503(a). ***Further, the brokers' possession of the assets was fleeting***.

*Id.* (emphasis added). In affirming the dismissal, the Eighth Circuit quoted the above reasoning of the District Court in its entirety noting, "We agree." *COR Clearing, LLC v. Calissio Res. Grp., Inc.*, 918 F.3d 579, 585 (8th Cir. 2019).[17] The same reasoning applies here: the Policy proceeds were not Securities Intermediary's property, and its possession of the proceeds was "fleeting."

The principle that intermediaries are not liable when they lack a possessory interest in the funds or derive no benefit from the transfers is reflected in *Christy*, discussed above, and in rulings from numerous other jurisdictions interpreting Section 550 of the Bankruptcy Code. *In re Cir. All., Inc.*, 228 B.R. 225, 233 (Bankr. D. Minn. 1998) (explaining that the rule that "mere conduits" cannot be held liable "is supported by basic fairness as well as public policy considerations," because "the broadest application of the concept of 'transferee' under [Section 550] would inappropriately subject mere stakeholders, bailees, and intermediaries to liability,

---

[17] While *COR Clearing* involved the Nebraska UCC, the relevant provisions are the same in Delaware.

32

where they had never stood to gain personally from the funds momentarily in their possession"); *see also United States v. Cohen*, 617 F.2d 56, 57-58 (4th Cir. 1980) (holding that an intermediary who cashed and transferred the sports bet winnings was not the "recipient of the winnings" because "defendant was merely the conduit for the winnings," lacking any personal claim or control over the funds).

The Delaware Supreme Court recognized this principle in *Malkin*, noting that although U.C.C. § 8-115 does not itself immunize a securities intermediary from Section 2704(b) claims, "many other rules of law [] protect agents and bailees from liability as innocent converters and that general tort law protects agents or bailees who act on the instructions of their principals or bailors." *Malkin,* 278 A.3d at 67 (quoting 6 *Del. C.* § 8-115 cmt. 2).

The comment to U.C.C. § 8-115 cites the Restatement (Second) of Torts § 235, which in turn, provides that a "bailee . . . who redelivers to his bailor . . . is not liable for conversion unless the person entitled to immediate possession has made an adverse claim upon him." Here, the Estate made no adverse claim on the Policy proceeds before their immediate transfer to LSH, nor has the Estate provided any evidence that Securities Intermediary had reason or obligation to question the Policy's validity under Delaware law. *See* U.C.C. § 8-115 cmt. 5 (Securities Intermediary has no obligation "to police whether the transactions recorded are appropriate"). Thus, by interpreting Section 2704(b) to cover "payees" in this

33

instance, the District Court expands liability to a mere bailee immune under the common law.[18]

Similarly, the District Court's ruling contravenes established Delaware common law that banks are not liable for simply acting "in accordance with the contract existing between itself and its depositor," which was the extent of Securities Intermediary's role here. *Mengele v. Christiana Fed. S. L. Ass'n*, 287 A.2d 395, 398 (Del. 1972). Banks performing intermediary services owe no duty of care to noncustomers, and, accordingly, are not subject to negligence claims brought by noncustomers. *See, e.g.*, *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 227 (4th Cir. 2002) (applying North Carolina law and concluding that "[w]e are persuaded by

---

[18] The District Court's interpretation of "payee" also has the potential to create further unintended friction with federal statutory articulations of bank authority. For instance, the National Banking Act, 12 U.S.C. § 21 *et seq.* (the "NBA"), preempts state laws that "significantly interfere" with a national bank's ability to exercise certain express and incidental powers. *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 33 (1996). Under the NBA, banks are granted the authority to "serve as agents for their customers in the purchase and sale" of a financial instrument. *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 259 (1995). The District Court's articulation of "payees" would effectively impose liability on national banks, like Securities Intermediary, that are covered by the NBA, for exercising power with respect to life insurance policies—recognized financial instruments. State statutes must be interpreted to avoid conflicts with federal law. *See State ex rel. Brown v. Grosch*, 152 S.W.2d 239, 245 (Tenn. 1941) ("In construing this statute we should adopt a construction which should not bring the statute in conflict with the Federal Statutes, for such conflict would result in the striking down of the State Statutes"); *see also Cnty. of Placer v. Aetna Cas. etc. Co.*, 50 Cal. 2d 182, 188-89 (1958) ("statutes relating to the same subject matter are to be construed together and harmonized if possible . . . .").

the reasoning articulated in the numerous cases holding that a bank does not owe noncustomers a duty of care."); *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 519 (5th Cir. 2018) (applying Mississippi law and concluding that banks generally do not owe a duty of care to non-customers, except in specific circumstances where the "bank has actual knowledge of its customer's misappropriation.").[19] The District Court's interpretation radically departs from this well-established precedent, despite the District Court's holding that Section 2704(b) codified the purported common law right to recover STOLI proceeds.[20]

\*      \*      \*

In short, the District Court erred in equating Securities Intermediary to a "payee" who received "benefits." Accordingly, Section 2704(b) is properly interpreted narrowly to avoid penalizing banks like Securities Intermediary for performing routine intermediary services, ensuring the statute's reach remains

---

[19] *Bell Bros. v. Bank One, Lafayette, N.A.*, 116 F.3d 1158 (7th Cir.1997) (holding a bank was not liable for RICO claims against a partnership that employed the bank as an escrow agent); *In re Agape Litig.*, 681 F. Supp. 2d 352 (E.D.N.Y. 2010) (finding banks not liable for a Ponzi scheme perpetrated by a customer); *Tzaras v. Evergreen Int'l Spot Trading, Inc*., No. 01 Civ. 10726 (LAP), 2003 U.S. Dist. LEXIS 2707 (S.D.N.Y. Feb. 25, 2003) (holding a bank not liable to a depositor for the fraudulent misconduct of the depository).

[20] The Estate cannot have it both ways: if Section 2704(b) codifies common law, then Securities Intermediary is shielded from liability; if not, then Section 8106 indisputably applies, barring the Estate's claim.

35

focused on parties with actual control or entitlement to policy proceeds.

## III. THE DISTRICT COURT ERRED IN FAILING TO OFFSET PREMIUMS PAID AGAINST THE AWARDED PROCEEDS.

As argued below, the District Court, citing *Malkin*, held that Section 2704(b) "merely codified 'the longstanding common-law rule' that estates could sue to receive the death benefits that were paid out on a life insurance policy when the beneficiary lacked an insurable interest." (1-ER-19 (citing *Malkin*, 278 A.3d 53, 61 & n.23).) *Malkin* cited the United States Supreme Court case *Warnock v. Davis* as the sole source of that "longstanding common-law rule." *Malkin*, 278 A.3d 53, 61 & n.23 (citing 104 U.S. 775 (1881)). In *Warnock*, the United States Supreme Court held that an estate was only entitled to the policy's death benefit less the premiums that the investor had paid to keep the policy in force during the insured's lifetime. 104 U.S. at 782-83. Accordingly, if Section 2704(b) codified the common law rule announced in *Warnock*, the Estate's recovery of the Policy proceeds in this case should have been reduced by $2,572,153—the premiums paid into the Policy by other parties. The District Court completely ignored this argument, which is clear error.

In reasoning that the Estate was entitled to the full Policy proceeds, the District Court limited its analysis to whether Securities Intermediary was entitled to a premium offset under an unjust enrichment theory, citing *Malkin*. (1-ER-11–12.) However, the *Malkin* court did not reject a common law premium offset rule. While

36

the *Malkin* court required proof of "a viable legal theory, such as unjust enrichment," for offset, it did not preclude the common law offset asserted by Securities Intermediary. 278 A.3d at 67. Rather, it made clear that it would not explicitly reach that issue because the policyholder in *Malkin* had not made that argument itself. *Id.* at 68 n.60. Subsequent courts interpreting *Malkin* have recognized that a common law premium offset constitutes a "viable legal theory" under its framework. *See, e.g., U.S. Bank, N.A. v. Estate of Albart*, No. 2020-CA-000762AX, 2024 WL 1520570, at *5 (Fla. Cir. Ct. Apr. 3, 2024) ("Here, one of the Viva Parties' 'viable legal theor[ies]' is that the premium offset is statutorily required under Section 2704(b) because, as *Estate of Malkin* instructed, the statute codified *Warnock*'s 'longstanding common-law rule.'"). The District Court also ignored the myriad of other common law decisions in which courts permitted estates to bring so-called "recovery" actions but limited that "recovery" to the death benefit minus the premiums. *See, e.g.*, *Finnie v. Walker*, 257 F. 698, 701 (2d Cir. 1919); *Quinn v. Catholic Knights*, 41 S.W. 343, 345 (Tenn. 1897); *Lanouette v. Laplante*, 36 A. 981, 982 (N.H. 1892).

Delaware law is clear that statutes must be read in harmony with common law unless explicitly overridden. *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Tr.*, 28 A.3d 1059, 1072-73 (Del. 2011). Despite its acknowledgement that Section 2704(b) "codified the longstanding common-law rule," (1-ER-19), the District Court ignored

common law treatment of return of premiums paid. In so doing, the District Court erred in ordering Securities Intermediary to return $5 million in proceeds without offsetting the $2,572,153 paid in premiums by entities other than the Insured and the Estate to maintain the Policy.

*    *    *

By awarding the Estate the full $5 million without deducting premiums paid by third parties, the District Court granted a windfall contrary to established common-law rules and Delaware's statutory interpretation principles.

## CONCLUSION

Under the District Court's interpretation of Section 2704(b), estates can bring claims to recover proceeds indefinitely, intermediaries performing routine banking functions face multi-million-dollar judgments simply for transferring funds, and estates involved in illegal wagering schemes are awarded windfalls. This interpretation contradicts the statute's intent. Accordingly, Securities Intermediary respectfully requests that the Ninth Circuit reverse both the SI Summary Judgment Order and the District Court's Order and Judgment.

Date: December 2, 2024        Alston & Bird LLP

                                  */s/ Courtney Quirós*
                                  Courtney Quirós
                                  *Attorney for Defendant-Appellant*
                                  WELLS FARGO BANK, N.A., as
                                  Securities Intermediary

38

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 24-5231

I am the attorney or self-represented party.

**This brief contains** | 9,313 | **words,** including | 0 | words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [              ].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Courtney Quirós | **Date** | December 2, 2024

*(use* "s/[typed name]" *to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** | 24-5231

The undersigned attorney or self-represented party states the following:

○  I am unaware of any related cases currently pending in this court.

○  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

⦿  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

> Plaintiff-Appellee also appealed the District Court's decision to dismiss Defendant LSH CO. from the District Court case. The 9th Circuit case number of that case is 24-5398. However, the issue of personal jurisdiction is unrelated to the issues presented in this appeal.

**Signature** | s/Courtney Quirós        **Date** | 12-02-2024
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 17**                                                    *New 12/01/2018*

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2024, I filed the foregoing Appellant's Opening Brief with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit using the Court's CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date:  December 2, 2024    Alston & Bird LLP

           */s/ Courtney Quirós*
           Courtney Quirós
           *Attorney for Defendant-Appellant*
           WELLS FARGO BANK, N.A., as
           Securities Intermediary